# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH BOULWARE, | ) | |
|     Plaintiff, | ) | Civil Action No. 15-300 Erie |
| | ) | |
| v. | ) | Magistrate Judge Baxter |
| | ) | |
| DEPUTY OVERMYER, et al., | ) | |
|     Defendants. | ) | |

## **MEMORANDUM OPINION**[1]

**SUSAN PARADISE BAXTER,** United States Magistrate Judge:

    Pending before the Court is Defendants' motion for sanctions, seeking dismissal of Plaintiff's action with prejudice or, alternatively, the imposition of attorneys' fees incurred in the preparation of the motion and in response to Plaintiff's motion for summary judgment. [ECF No. 72, p. 13]. Defendants contend that such consequences are warranted based upon Plaintiff's commission of a fraud upon the Court, through his submission of manufactured and forged evidence in opposition to a pending motion.

    As more fully set forth herein, the Court agrees that Plaintiff has abused the judicial process in an effort to harass Defendants and to fraudulently extract monetary damages in pursuit of questionable claims. Therefore, in accordance with Rule 11 of the Federal Rules of Civil Procedure and the Prisoner Litigation Reform Act, Plaintiff's action shall be dismissed with prejudice.

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. *See 28 U.S.C. § 636 et seq*. (ECF Nos. 4, 13).

I. **Background and Relevant Procedural History**

Kenneth Boulware ("Plaintiff") initiated this civil rights action pursuant to 42 U.S.C. § 1983, by filing a motion to proceed *in forma pauperis,* accompanied by his complaint. [ECF No. 1] At the time of filing suit, Plaintiff was an inmate incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI – Forest"). Named as Defendants in his complaint are: Deputy Overmyer ("Overmyer"), Deputy Oberlander ("Oberlander"), Major Ennis ("Ennis"), Lt. Haggerty ("Haggerty"), Lt. Davis ("Davis"), Lt. Dickey ("Dickey"), Lt. Murin ("Murin"), Sgt. Cochran ("Cochran"), Sgt. Anthony ("Anthony"), C.O. Mullooly ("Mullooly"), C.O. Drayer ("Drayer"), Dr. Simons ("Simons"), Nurse Hill ("Hill"), and C.O. Baumcratz ("Baumcratz").[2] [ECF No. 3].

Plaintiff's complaint alleges several Eighth Amendment conditions of confinement claims and a separate Fourteenth Amendment due process claim arising from the theft of a television. Plaintiff's Fourteenth Amendment claim was dismissed for failure to state a claim by Order entered March 7, 2017, due to the availability of a post-deprivation remedy. [ECF No. 52]. Accordingly, the following claims remain:

(1) an Eighth Amendment excessive force claim against Defendants Drayer, Mullooly, Cochran, Buamcratz, and Murin, arising from a November 11, 2015, incident when his hand was allegedly pulled through a cell-door wicket;

(2) an Eighth Amendment failure to protect claim, alleging that Defendants failed to prevent him from being raped by his cellmate on November 18, 2015, after he says he informed Defendants Oberlander, Anthony and Ennis that he had received threats from other inmates indicating an attack was imminent;

---
[2] The Court has adopted the correct spelling of Defendants' names, as indicated in the various filings to date.

(3) an Eighth Amendment claim of deliberate indifference against Defendants Simons and Hill, related to inadequate medical and psychological care; and,

(4) an Eighth Amendment and/or First Amendment claim related to the denial of several showers and meals, as well as harassment by DOC personnel, in retaliation for filing grievances.

Upon the conclusion of discovery, Defendants filed their summary judgment motion, requesting the entry of judgment in their favor as matter of law. [ECF No. 58]. Defendants contend that Plaintiff failed to appeal the initial denial of any grievance and, accordingly, he has failed to properly and completely exhaust his claims, as required by the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), 42 U.S.C. § 1997e(a). In addition, Defendants indicate that certain Defendants and claims were not identified by Plaintiff in any grievance and, therefore, have not been exhausted. Finally, based upon the uncontradicted evidence of record, Defendants argue that Plaintiff cannot establish the existence of required elements of his failure to protect claim. [ECF No. 58, 61].

Plaintiff has filed a motion for summary judgment, primarily serving as his response to Defendants' pending motion, and has attached as exhibits thereto copies of documents purporting to evidence that he completely and properly exhausted each of his claims through the prison grievance process. [ECF Nos. 64, 65]. In addition, as to his failure to protect claim, Plaintiff provides documents which purport to establish Defendants' deliberate indifference to an identifiable risk of a potential inmate assault.

Defendants, in turn, have filed their response to Plaintiff's motion, and assert that many of Plaintiff's exhibits in opposition to Defendants' motion for summary judgment are fabricated or forged. Defendants argue that the manufactured documents should not impact the dispositive

effect of Plaintiff's failure to exhaust administrative remedies or to otherwise establish issues of fact with regard to any of his claims. [ECF Nos. 68, 72].

Defendants further move for the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Defendants argue that Plaintiff's exhibits are designed to harass and needlessly prolong and complicate the case, and otherwise perpetrate a fraud upon the Court and judicial process. [ECF 72, pp. 13 - 15]. Defendants seek dismissal of the pending action or, alternatively, an award of reasonable attorneys' fees in the amount of $4812.50, determined by the prevailing hourly rate, for the time and expense incurred to "ferret out and address some of the forgeries and altered, fraudulent documents" Plaintiff has filed with the Court. [ECF No. 72, pp. 14-15].

In response to the motion for sanctions, Plaintiff has filed a "Motion to Strike and to Move Forward from Summary Judgment." Plaintiff contends that it is Defendants who have fabricated evidence to avoid liability for their conduct, and that "all of [his] documents are true and correct." [ECF No. 70, p. 2]. Plaintiff's motion to strike was denied on August 31, 2017, leaving Defendants' motion for sanctions, as well as cross motions for summary judgment to be resolved. [ECF No. 71].

In support of their entitlement to sanctions, Defendants indicate that, in large part, the 135 pages of exhibits submitted by Plaintiff in response to their motion for summary judgment have been fabricated or contain post-hoc falsifications or forgeries. These fabrications include fake grievances, appeals, request slips, altered medical records, and forged signatures.

Defendants provide the declaration of the current SCI-Forest Grievance Coordinator, who indicates that many of the grievances produced by Plaintiff have been altered or manufactured. She points to certain grievances that are dated 2015 or January 2016, but are drafted on forms

that were not in existence or effective until mid-February 2016, as indicated by the Form Effective Date inscribed on the bottom of each form. [ECF No. 72-1, pp. 3-5]. For example, ECF No. 65-4, p. 16 purports to be a Grievance Appeal drafted on November 29, 2015, related to the Defendants' failure to process grievances concerning alleged retaliation. However, the DC-ADM 804 Appeal form submitted to the Court by Plaintiff was not issued until January 26, 2016, and was not effective or available for use until February 16, 2016. Similarly, Plaintiff has provided the Court with a document dated December 5, 2015, purporting to be a timely grievance appeal, related to the failure to provide medical treatment. Again, the form upon which the appeal was drafted did not become available to inmates until two months later, in February 2016. [ECF No. 65-4, p. 9].

The Court takes notice of the patently forged signatures of Ms. Siegel, the former Facility Grievance Coordinator, contained on documents provided to the Court by Plaintiff to establish his initiation of the grievance process. *See*, ECF Nos. 65-4, pp. 8, 15. As indicated in the Declaration of Lisa Reeher, based on her review of existing records and her experience and personal knowledge of Ms. Siegel's signature, both documents are forged. The Court's review of Plaintiff's exhibits leads inescapably to the conclusion that these documents contain signatures bearing clearly visible and blatant misspellings of Ms. Siegel's name ("S. Siegil"), and handwriting that is not consistent with documents submitted by the parties that are not contested.

In addition, Plaintiff has provided the Court with two documents using a grievance identification number which had been assigned to a different inmate. [ECF No. 72-1, p. 3]. The documents also bear the forged signature and misspelled name of the Facility Grievance Coordinator, or are drafted on forms not in existence on the date purportedly drafted by the Plaintiff. [ECF Nos. 65-9, pp. 2-3]. Other copies of grievances submitted by the Plaintiff have

been altered to add claims and parties not previously mentioned, or to make it appear that he filed an appeal where he had failed to do so. *See*, *e.g.*, ECF No. 65-9, pp. 19-21, *cf* ECF No. 72-1, pp. 10-11.

Plaintiff has altered medical records, which have been submitted to the Court in support of claims related to the alleged use of excessive force and/or the alleged failure to provide medical treatment for a purported sexual assault by a cellmate. Defendants have supplied the Court with copies of the original records to compare with Plaintiff's fabricated documents. On a medication log, Plaintiff added the words "sexual/rape assault" in his own handwriting, in a location reserved for the signature of an examining nurse. [ECF No. 72-1, pp. 9-10]. Plaintiff altered Progress Notes to indicate that he had a "bleeding open wound," where the original indicates a "healing" abrasion, changed the acronym BUE (bilateral upper extremity) to "BlUE," and added "crooked" to "left hand," to indicate a blue hand, with a broken bone. In contrast, the original Progress Note indicates that Plaintiff's upper extremity and left hand were examined and, other than a healing abrasion with minor swelling, Plaintiff did not suffer any injury. [ECF No. 72-2, pp. 11-12]. In addition, Plaintiff altered a Medical Incident/Injury Report to indicate that his left ring finger was broken and deformed; however, as indicated in an x-ray report, there were no abnormalities in Plaintiff's hand. [ECF Nos. 72-2, pp. 13-14; 72-3]. Plaintiff has also altered Physician Order Forms and Suicide Risk Indicators Checklist, adding references to a "suicide watch" and an alleged sexual assault, where neither are present in the original documents. [ECF Nos. 72-2, pp. 16-19]. These alterations are blatant, and completed by Plaintiff, based upon spacing, handwriting, and spelling.

Defendants provide the Declaration of Derek Oberlander, SCI-Forest Deputy Superintendent, who states that based upon his familiarity with certain officials, signatures

(including his own) have been forged on several documents provided to the Court by Plaintiff. [ECF No. 72-4]. A cursory review suffices to demonstrate to the Court the apparent forgery of these signatures. In addition, Deputy Oberlander indicates that Plaintiff's fabricated documents include information as to housing units he hadn't been assigned, or other relevant information that is otherwise incorrect, but serves as indicia to Plaintiff's attempt to fabricate evidence. [ECF No. 72-4].

In sum, Plaintiff has filed dozens of documents with the Court that were patently manufactured or altered so as to challenge Defendants' entitlement to summary judgment as a matter of law.

## II. **Discussion**

The Court's ability to dismiss an entire action due to fraud on the Court may arise under various procedural rules, or under the inherent power of the Court. *See e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 42, 46 (1991) (discussing and contrasting several sources of the Courts' authority and obligations to control various aspects of litigation and to fashion appropriate sanctions for conduct which abuses the judicial process.) *See also, Derzack v. County of Allegheny, PA.,* 173 F.R.D. 400, 412–13 (W.D. Pa.1996) *aff'd* 118 F.3d 1571 (3d Cir. 1997) (listing cases wherein courts used their inherent authority to deter misconduct when it constitutes fraud on the Court by dismissing the action.)

Accordingly, it is well-settled that a district court "may dismiss a suit outright in response to litigation abuses." *Republic of the Philippines v. Westinghouse Elect. Corp.*, 43 F.3d 65, 73 n.10 (3d Cir. 1995) (*citing Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 566 (3d Cir. 1985). Regardless of the source of authority invoked, the United States Court of Appeals for the Third Circuit has held that judges should determine the propriety of punitive dismissal by

7

referencing the factors outlined in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863 (3d Cir. 1984). *See also, Adams v. Trustees of New Jersey Brewery Employees Pension Trust Fund*, 29 F.3d 863, 870 (3d Cir. 1994) (dismissal for failure to prosecute under Fed. R. Civ. P. 41(b) analyzed with reference to *Poulis* factors); *Hoxworth v. Blinder, Robinson & Co. Inc.*, 980 F.2d 912, 918–19 (3d Cir. 1992) ("we apply 'some or all of the six-part test enunciated in *Poulis* ...' in reviewing sanction orders that deprive a party of the right to proceed with or defend against a claim").

In *Poulis*, a six factor balancing test was set forth to guide a court's analysis as to whether dismissal of a claim was an appropriate sanction. The factors are:

(1) the extent of the party's personal responsibility;

(2) the prejudice of the adversary caused by the failure to meet scheduling orders and respond to discovery;

(3) a history of dilatoriness;

(4) whether the conduct of the party or the attorney was willful or in bad faith;

(5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and

(6) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868.

In balancing the *Poulis* factors, the Third Circuit has explained that "no single *Poulis* factor is dispositive," and "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003); *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). However, in applying the Poulis factors, the Court must be mindful that dismissal is an extreme sanction because it deprives a litigant of his or her day in

court. *Poulis*, 747 F.2d at 867–68. Dismissal may be appropriate "so long as the ... court carefully considers and weighs the several factors and reasonably exercises his or her discretion in finding the scales tip toward dismissal." *Derzack*, 173 F.R.D. at 414 (*citing Mindek*, 964 F.2d at 1373).

1. *The Extent of the Party's Personal Responsibility*

Plaintiff is proceeding *pro se* and so is solely responsible for the forged and manufactured documents filed by him with the Court. This factor weighs heavily in favor of dismissal.

2. *Prejudice to the Adversaries and Impact on Integrity of Judicial System*

As indicated by Defendants' response to Plaintiff's motion, determining the veracity and accuracy of Plaintiff's exhibits has required a substantial investment of Defendants' resources, including time to locate original documents, interview witnesses, and isolate fabricated statements and signatures. Thus, Defendants have suffered prejudice. In addition, the Court has been required to review and rule upon the viability of Plaintiff's claims in the face of manufactured evidence propounded by the Plaintiff in an effort to mislead the Court.

"Where fraud on the court is the underlying misconduct upon which the district court is considering dismissal, the *Poulis* 'prejudice' prong encompasses not only the prejudice to the litigants but also the impact on the judicial system and the threat to the integrity of the court…." *Wesley v. Scharff*, 2011 WL 5878053 *2 (W.D. Pa. Sept. 26, 2011). This factor weighs heavily in favor of dismissal. "As noted by the United States Supreme Court: "tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good

order of society." *Id., quoting Hazel-Atlas Glass Co. v. Hartford – Empire Co.,* 322 U.S. 238, 246 (1944) *overruled on other grounds, Standard Oil v. United States*, 429 U.S. 17 (1976).

This Court is mindful of its responsibility to ensure that litigants who avail themselves of the jurisdiction of the court do not partake in flagrantly abusive litigation practices that demean the institution and its role in ensuring justice. In light of the conclusive evidence of Plaintiff's misconduct, this factor weighs very heavily against him.

3. *A History of Dilatoriness and Abuse*

When confronted with evidence of his misconduct, Plaintiff filed a motion to strike and "move forward," accusing Defendants of manufacturing evidence to dispute his fabrications and blatant forgeries. [ECF No. 70]. This demonstrates a pattern of bad faith and lack of candor, seeking solely to "forestall [his] day of reckoning," which weighs in favor of dismissal. *Derzack*, 173 F.R.D. at 416, *Wesley*, at *3.

4. *Willfulness or Bad Faith*

As observed in *Derzak* and *Wesley*, "[i]t is hard to imagine a more willful act of fraud on the court than the deliberate, elaborate scheme concocted by the plaintiff[]" to manufacture and submit one fraudulent document after another in pursuit of monetary gain, and to harass each of the named Defendants. *Derzak*, at 417; *and see Wesley*, at *3. Because Plaintiff's conduct evinces an irrefutable display of bad faith, this factor heavily favors dismissal.

5. *Alternative Sanctions*

The Court has considered various alternative sanctions; however, in this case, monetary sanctions to reimburse Defendants for costs incurred would be ineffective at best. Plaintiff is an inmate with no resources, and given his *ifp* status, has been deemed unable to pay filing fees, rendering monetary sanctions hollow. Further, permitting his lawsuit to continue by merely

excluding the evidence would send a message that the court remains open to claims, even by those who seek justice by fraudulent means. *Derzak*, at 417; *Stafford v. Derose*, 2015 WL 1499833 (M.D. Pa. April 1, 2015). This factor indicates dismissal is warranted, and that dismissal is proportionate to the severity of Plaintiff's misconduct.

      6. *Meritoriousness of the Claims and Defenses*

"A claim or defense is meritorious when the allegations of the pleadings, if established at trial, would support recovery by the plaintiff or alternatively, would constitute a complete defense." *Stafford*, at *5, citing *Poulis*, 747 F.2d at 869-70. Here, in the absence of Plaintiff's fabricated evidence, and based upon the pleadings and other evidence of record, it does not appear that Plaintiff's complaint has any merit. As such, this factor also weighs in favor of dismissal.

Because all six *Poulis* factors weight in favor of dismissal, the Court concludes that Plaintiff's complaint should be dismissed with prejudice. Defendants' motion for sanctions will be granted, and an appropriate order dismissing the complaint will follow.

                                            /s/ Susan Paradise Baxter
                                            SUSAN PARADISE BAXTER
                                            United States Magistrate Judge

cc:    All counsel of record via CM/ECF

      Kenneth Boulware
      JA 0827
      SCI Fayette
      50 Overlook Drive
      LaBelle, PA 15450